Mauch Chunk Township Taxpayers' Petition.

Argued November 14, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALD-RIGE, STADTFELD, PARKER and JAMES, JJ.

*George A. Shutack,* for appellants.

*Ben Branch,* for appellee, did not appear and filed no brief.

Per Curiam, April 15, 1935:

In July, 1934, more than twenty-five taxpayers of Mauch Chunk Township, a township of the second class in Carbon County, petitioned the court below to direct the supervisors of the township to appoint at least two qualified electors to act as policemen and to serve at the will of the supervisors.

The petition was filed under Section 590 of Article V, of "The Second Class Township Law" of May 1, 1933, P. L. 103, 131, 53 PS §19,093-590. The applicable portions of the section read:

"Upon the petition of not less than twenty-five taxpayers of any township ...... to the court of quarter sessions, representing that the safety of the citizens and the security of property makes it necessary for the appointment of one or more electors ...... to act as policemen, the court shall consider said petition, and, if satisfied of the reasonableness and propriety of said application, shall direct the supervisors of said township to appoint one or more qualified electors ...... to act as policemen, and to serve at the will of said supervisors.

"The court shall fix the number of policemen, the compensation of such policemen, and shall limit the term of service of said policemen as it may deem proper ........"

The court issued a rule upon the supervisors to show cause why the prayer of the petition should not be granted. The answer of the supervisors interposed no objection upon their part, but directed attention to the fact that the only tax levy made for the year 1934 was for street lighting and that the statute contained no provision for levying a tax for the payment of township policemen.

After replication by the petitioners, the court below,

THOMAS, P. J., directed that a hearing be had upon the issues raised by these pleadings. As a result of a full hearing, at which the financial condition of the township was developed in detail, the petition was denied by an order reading:

"Now, to wit, September 4, 1934, testimony having been taken and argument had, after due consideration the court is not satisfied of the reasonableness and propriety of said application and the prayer of the petitioners is denied."

Appellants seem to have overlooked the provision of the statute that the prayer of their petition is to be granted only when the court is "satisfied of the reasonableness and propriety" of the application. By this phraseology the legislature has invested the court with a wide discretion.

We think the following excerpts from the opinion of the court below demonstrate that there has been no abuse of that discretion:

"The court entered into a hearing in the matter as to the necessity of appointing a policeman, or policemen, on the question as to (1) whether or not it required policemen for the safety of the citizens and the security of property, and, further, (2) as it is the duty of the court to fix the compensation it was necessary to inquire into the finances of the township, so that the court could be satisfied of the reasonableness and propriety of the application.

"Mauch Chunk Township is a township of the second class. The total area is about 23,365 acres. Its population in 1920 was 6,191 and the population in 1930 was 6,362. The population has not grown since 1930, and, no doubt, it is less. In this township there are several villages, viz., Nesquehoning, which has a population of about 4,500, and which is separated by a creek from another village, New Columbus, which has a population of about 950; Hauto, with a population of about

550; Hacklebernie, with a population of about 125; Bloomingdale, with a population of about 100; Chestnut Hill, with a population of about 50; and Coalport with a population of about 25. ......

"All the petitioners are from the village of Nesquehoning. There is no evidence to show that the safety of the citizens requires the appointment, except that the state highway, which runs through the village of Nesquehoning, is heavily burdened with traffic. The court is familiar with the traffic travelling through Nesquehoning and such traffic has been greatly relieved by a cement and brick road lately built leading from Lansford to the county seat at Mauch Chunk through the boroughs of Summit Hill and the villages of Bloomingdale and Hacklebernie. The two towns of Lansford and Summit Hill have a combined population of about 15,000, and most of the traffic from these two large towns, is diverted and now travels through a portion of Bloomingdale. The distance from Summit Hill and Lansford to Mauch Chunk has been lessened by this new improvement through Bloomingdale by at least a mile. The traffic to and from the county seat and these two towns no longer passes through Nesquehoning. The traffic is not such that it requires policemen for such purpose.

"In addition thereto, the township is patrolled for the regulation of traffic by the State Highway Patrol, which patrol has a station located in Carbon County, and also by the State Highway Patrol from its station at Hazleton.

"As to the security of property and the safety of its citizens, there is no evidence to show that the appointment of policemen is required. The court of quarter sessions is fully informed as to the number of crimes against the property and persons in the township, and, particularly, from the village of Nesquehoning. There is no necessity of a policeman, or policemen, for such purpose.

"As to the financial condition of the township, it appears to the court that no taxes have been levied for any purposes except for street lighting. The township had had no taxes levied and collected for the repair and maintenance of the roads, the roads having been maintained by the Lehigh Navigation Coal Company, which is the largest taxpayer in the township, under annual contracts between that company and the supervisors entered into with the annual approval of the court under what is commonly called the Losch Road Law.

"In 1911 a petition of the majority of real estate owners of said township was presented to the supervisors and the supervisors arranged, commencing with the year 1912 and continuing until the present time, to levy an annual tax for street lighting purposes on the property of the entire township and not on any particular district. For the lighting of its streets the township is now obliged to pay $496.99 monthly to the utility companies which furnish the lines and current. Lighting bills from June to September, both inclusive, would total $1,987.96, and at that time, with no income in sight until October, when the taxes would be partly paid, the township faced a shortage totalling $1,623.57. At this time they received from the county treasurer the sum of $1,875 which was due the township for 'beer licenses.' [Malt Liquor License Law] ......

"This 'beer money' is, under the license act, paid 'for the use of such township,' and has been applied to the light fund. This 'beer money' going into the light fund, there will be no money arising from taxes available, or from any other source, to pay any policemen until October, 1935.

"The petitioners suggest that the township should borrow money to pay such policemen. The court is of the opinion that it is not reasonable and proper for the township to become indebted to pay these police-

men, and the question is, whether or not the township can incur such a debt? ......

"The only revenues due within a year in Mauch Chunk Township now are the light funds and the 'beer license money,' and whether any money could now be borrowed and whether it could be legally borrowed, as the revenues of the township now stand, is of such moment that the court is of the opinion that it is not reasonable and proper for the township to become so indebted.

"The tax duplicate for 1934 for the amount of tax assessed for lighting purposes is $10,723.19. Of this amount the largest amount is paid by the Lehigh Navigation Coal Company, which is $7,542.71. The evidence shows that this company has appealed from its assessment. It now has paid this money into court, and ...... the court is to allocate that portion of the fund paid into court which is reasonably free of dispute. According to the petition by the said taxpayer, the amount which is free from dispute is $1,705.85, which will be paid to the lighting fund, leaving a balance in court, to await the final determination of the appeals, of $5,836.46, nearly one-half of the tax levied. ......

"Under these facts, the court has no sound basis to fix the salary of the policemen. The court further finds that the township is in no financial condition to borrow money or to pay from its funds such policemen."

Order affirmed.